# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRACIE MOSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12-CV-307-JED-PJC |
| v. | ) |
| | ) |
| UNIVERSITY VILLAGE RETIREMENT COMMUNITY, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

**I.    Background**

Plaintiff, Tracie Moss, worked as a Nursing Home Health Care Administrator for the defendant, University Village Retirement Community (UVRC) for over three years. UVRC provides seniors with independent and assisted living residential options. Ms. Moss took a leave of absence from October 2011 to January 9, 2012, to care for her newborn child. Shortly after her return to work, Moss learned that UVRC personnel had failed to report to the State of Oklahoma a resident's allegation of sexual abuse by a UVRC staff member, Michael Knighten, who was a nurse's aide. Pursuant to a state regulatory rule, which implements the state Nursing Home Care Act, facilities such as UVRC are required to report to the Oklahoma Department of Health allegations and incidents of resident abuse or neglect. *Okla. Admin. Code* 310:675-7-5.1. "All reports to the Department shall be made by telephone or facsimile within twenty-four (24) hours of the reportable incident unless otherwise noted." *Id.*, § (a). Although the allegation of sexual abuse was received by UVRC on January 4, 2012 -- five days prior to Moss's return from leave -- UVRC had not made the required report as required by the regulation. Moss thus

completed an investigation and then reported the allegation to the Department of Health on January 13, 2012.

Eleven days after Moss's report of the resident's allegation of sexual abuse to the Department of Health, which was fifteen days following her return from FMLA leave, Moss's employment was abruptly terminated. Moss's prior performance reviews had been mostly positive and she was consistently rated as having met or exceeded expectations. UVRC's documentation for the reasons for termination identified the "current subject / problem" for which Moss's employment was terminated as "[l]ack of fit in the UV[RC] culture....failure to display actions that support our Mission Statement." (Doc. 33-3). The same document lists "previous counselings" allegedly provided to Moss, including two from 2010, which Moss disputes occurred. Vanessa Neal was the Vice President and Executive Director of UVRC at and following the relevant time of Moss's employment at UVRC. Moss asserts that the underlying documents produced by UVRC as back up for the alleged "previous counselings" were fabricated by Neal following the initiation of this litigation, as Moss was not counseled as alleged and the underlying documents are not signed either by Human Resources staff or by Moss, as such forms usually are. (*See* Doc. 33-16, 33-17). Neal admitted that Moss had never been disciplined before she was terminated. (Doc. 33-4 at 8, Depo. p. 78).

Moss sued UVRC in state court and asserted claims for wrongful termination in violation of public policy pursuant to *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989) (*Burk* claim) and unlawful retaliation under the Family and Medical Leave Act (FMLA). UVRC removed the action to federal court. UVRC now seeks summary judgment on Moss's claims. (Doc. 29). For the reasons discussed herein, material facts are genuinely disputed, precluding summary judgment.

## II. Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The Court may not weigh the evidence or credit the evidence of the party seeking summary judgment while ignoring evidence offered by the non-movant. *Tolan v. Cotton*, __ U.S. __, 134 S. Ct. 1861, 1868 (2014) (per curiam).

## III. Discussion

### A. Public Policy *Burk* Claim

UVRC first argues that Moss may not maintain a *Burk* claim based upon a rule provided by the Oklahoma Administrative Code. (Doc. 29 at 12-14). According to UVRC, a *Burk* claim may only be maintained based upon "constitutional, statutory, or decisional law," rather than regulatory rules. (*Id.*).

3

As Moss points out in response, in *Burk* itself, the Oklahoma Supreme Court cited with approval other jurisdictions which held "that an employer may be held liable where his discharge of an employee violates a clear mandate of public policy" such as when "'the employer's conduct contravenes the letter or purpose of a constitutional, statutory, *or regulatory provision or scheme*'" and "'[p]rior judicial decisions may also establish the relevant public policy.'" *Burk*, 770 P.2d at 29 (emphasis added) (quoting *Parnar v. Americana Hotels, Inc.* 652 P.2d 625, 631 (Haw. 1982)). Courts in other cases applying Oklahoma law have similarly held that regulations may supply the "public policy" for purposes of a *Burk* claim. *See, e.g.*, *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 364, n.19 (Okla. 1994) ("When attempting to find and articulate a clear mandate of public policy, we look to the letter or purpose of a constitutional, statutory or regulatory provision."); *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1277, n.3 (10th Ci. 2003) (plaintiff must identify a public policy that is "articulated by state constitutional, statutory, regulatory or decisional law" and, "[a]lthough many cases state that the policy must be articulated in 'constitutional, statutory, or decisional law,' others indicate that regulatory law is acceptable as well."). UVRC's argument that an Oklahoma regulation may not support a *Burk* claim is clearly without merit.

UVRC next argues that there is "insufficient evidence" to support plaintiff's *Burk* claim. (Doc. 29 at 14). To establish a *Burk* claim, a plaintiff must ultimately prove the following elements: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the

Oklahoma policy goal." *Vasek v. Bd. of County Comm'rs of Noble County*, 186 P.3d 928, 932 (Okla. 2008).

UVRC contends that Moss has not provided sufficient evidence to support the third element, that the termination of her employment was, in significant part, for a reason that violates an Oklahoma public policy goal. The Court disagrees. Moss had never been disciplined prior to being discharged by UVRC. UVRC does not dispute that *Okla. Admin. Code* 310:675-7-5.1 applies to UVRC or that it requires that allegations or incidents of abuse of its residents must be reported within 24 hours. It is also undisputed that there had been an allegation of sexual abuse of a resident, which neither Aleshia Coble, the Director of Nursing, nor Ms. Neal, UVRC's Executive Director, had reported in the four days between the abuse allegation and Moss's return from FMLA leave. Moss asserts that Neal was friends with Michael Knighten, the UVRC employee who was alleged to have abused the resident. (Doc. 33-23 at ¶¶ 3-4). Knighten had previously been the subject of an allegation of sexually inappropriate behavior towards other staff (Doc. 33-11), and had previously pleaded guilty to an assault and battery charge, which was known to UVRC (Doc. 33-12). And Neal acknowledged that it would have been a violation to not report the allegation. (Doc. 33-4 at 5, Depo. p. 55).

When Moss returned from maternity leave and learned that UVRC had not made the required report to the Oklahoma Department of Health, Moss investigated and then made the report herself. Moss expressed her frustration to Neal that Coble had received the complaint earlier while Moss was on maternity leave and that it had not been reported, much less investigated. (*Id.*). Neal did not discipline Ms. Coble for failing to make the timely report. (*Id.*). Neal asserted that she believed that Moss was going to discipline Coble. (*Id.*, Depo. p. 56). However, on the same date that Moss made the report which UVRC had not made during Moss's

5

absence, Coble complained about Moss's "questioning [Coble] as to whether or not [Coble] was going to inform [Moss of the sexual abuse allegation] and noting the time that had lapsed" (Doc. 29-1 at 33). When Moss forwarded Coble's complaint to Ms. Neal, she counseled Moss that she should be supporting and reassuring Coble. (*Id.*, Depo. pp. 55-56; *see also* Doc. 33-24). Thus, rather than disciplining Coble for failing to timely report a resident allegation of sexual abuse, Neal suggested that Moss may be viewed "as the 'big dog pissing on all the trees' to reestablish [Moss's] territory" and counseled Moss that she should be more supportive of Coble. (*See* Doc. 29-1). Eleven days later, Neal terminated Moss's employment.

Moss asserts that a reasonable jury could infer from these facts that (1) the allegation of sexual abuse was not initially reported while Moss was on maternity leave because such a report would reflect badly upon UVRC for continuing to employ Knighten after knowledge of his assault and battery conviction and his documented inappropriate and sexually harassing conduct toward another UVRC employee and (2) UVRC terminated Moss, in significant part, because Moss reported the resident allegation of sexual abuse by Knighten to the Oklahoma Department of Health. There is evidence which, construed in favor of Moss, presents facts issues for the jury as to the basis for Moss's termination. The close temporal proximity of the termination from Moss's report to the Department of Health (11 days), coupled with the other evidence noted above, reflects the existence of genuine disputes of material facts on the issue of whether the termination was, in significant part, motivated by Moss's reporting of the allegation of sexual abuse of a resident.

### B. FMLA Retaliation Claim

Moss's FMLA retaliation claim is subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Metzler v. Fed. Home Loan Bank of*

6

*Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Thus, "the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.* (citing *Doebele v. Sprint / United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003)).

To state a prima facie case of retaliation, Moss "must show that: (1) she engaged in a protected activity; (2) [UVRC] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler*, 464 F.3d at 1171. Here, Moss's entitlement to 12 weeks of FMLA leave for the birth of her son is not in dispute, and Moss took such FMLA leave, which satisfies the first element of a prima facie case. *See id.* The second element is also not in issue, as Moss's employment was terminated, which is a materially adverse action. *Id.*

UVRC argues that Moss has not demonstrated the third element of a prima facie case because Moss has not provided any evidence that there was any causal connection between her FMLA leave and her discharge from employment. (Doc. 29 at 16). The record here shows genuine disputes of material facts with respect to the causation element, which prevents summary judgment. Moss's employment was terminated shortly after her return from her lengthy maternity leave. Moss had previously received generally positive performance reviews and had never been disciplined prior to her termination. These facts are sufficient to establish a prima facie case.

In addition, assuming that UVRC has identified a legitimate, non-retaliatory reason for terminating Moss's employment, Moss has presented evidence that presents fact issues as to whether UVRC's stated reason is pretextual. The stated reason on the documentation of her

termination was a "[l]ack of fit in the UV[RC] culture....failure to display actions that support our Mission Statement." (Doc. 33-3). A reasonable jury could discredit this stated lack of fit with the culture based upon the fact that Moss had worked in her position for over three years, but UVRC did not in that three years determine she did not fit within the culture until immediately after she returned from her FMLA leave. Neal also asserts in her affidavit that she determined to terminate Moss only on the very day of the termination, but the completed documentation of the termination references the "impact" of Moss's lack of fit was "[s]taff turnover higher than it should be; frustrated staff that are not performing at their optimal level which then affects resident care." (*Id.*). UVRC has not provided any evidence that there had been *any* staff turnover between Ms. Moss's return to work and the date of the termination, although Neal asserts that she made the decision that there was a basis to terminate just that day. A reasonable jury could view UVRC's stated reasons for Moss's termination to be conflicting and thus pretextual.

Moss has also provided sufficient evidence to undermine the legitimacy of certain of the alleged write-ups that Neal alleges were previously provided to Moss. For example, Moss disputes that two of those write-ups / "counselings" were discussed with her. The documents describing those alleged counselings do not contain the signatures of either Human Resources personnel or Moss, although such documents typically would contain both Human Resources and employees' signatures. Moss also points out that her written performance evaluations for the relevant time frames conflict with statements in the "counselings". (*See, e.g.*, Doc. 33 at ¶¶ 8-13, 15, 17). The evidence presents issues of fact as to whether UVRC terminated Moss because she did not fit within UVRC's "culture" or UVRC actually terminated Moss in retaliation for her exercise of FMLA rights.

**IV.    Conclusion**

There are issues of fact precluding summary judgment. UVRC's Motion for Summary Judgment (Doc. 29) is accordingly **denied.**

The following schedule shall apply to the remainder of this case:

| | |
|---|---|
| **January 28, 2015** | Parties shall submit final proposed Pretrial Order and Trial Exhibits (2 notebook sets of each party's) |
| **February 4, 2015 at 9:30 a.m.** | Final Pretrial Conference |
| **February 10, 2015** | Requested Jury Instructions, Requested Voir Dire, Trial Briefs (if desired), and Exchange of Demonstrative Exhibits |
| **February 17, 2015 at 9:30 a.m.** | Jury Trial |

SO ORDERED this 2nd day of September, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE